**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

       **-v-**　　　　　　　　　　　　　　　　14-CR-102-S

**GREGORY KWIATKOWSKI,**
**RAYMOND KRUG, AND**
**JOSEPH WENDEL,**
　　　　　　**Defendants.**
_____


## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report on dispositive motions.


## PRELIMINARY STATEMENT

Defendants, Gregory Kwiatkowski, Raymond Krug and Joseph Wendel ("the defendants"), are charged in a five-count Indictment, with having violated Title 18, United States Code, Sections 241, 242 and 2. Dkt. #1. Presently pending is the defendants' collective motion to suppress the defendants' statements made under the threat of losing employment ("*Garrity* statements") and derivative evidence and to dismiss the Indictment "because it is impossible to know whether the indictment was tainted by the *Garrity* statements or derivative evidence and such uncertainty warrants dismissal." Dkt. ##21, 22, 23 and 38.

# FACTS

Sometime on May 31, 2009, an automobile with four occupants drove by a group of individuals who were standing on the corner of Main and Custer Streets in Buffalo, New York when someone in the automobile fired a number of BBs into the group. The police were called, and in response, the automobile was located shortly after the shooting by police from the Town of Cheektowaga and the City of Buffalo at 52 Treehaven Road, which is in relatively close proximity to Main and Custer Streets. Upon arrival at the 52 Treehaven location, the defendants, acting in their official capacity as police officers, seized the four individuals, who are referred to as J.C. , D.S., D.D. and J.W. in the present indictment, and allegedly used excessive force as to each individual seized when placing them under arrest. A search of the automobile resulted in the discovery and seizure of a Powerline, model 15XT Co2 BB gun.

On or about August 31, 2009, two of the individuals, J.C. and D.S., who had been arrested by the defendants, filed Notices of Claim against the City of Buffalo based on the alleged unlawful conduct of the defendants in arresting them. On September 9, 2009, J.C. and D.S. filed a Citizen's Complaint with the Buffalo Police Department ("BPD"). As a result of the filing of the Citizen's Complaint, the Professional Standards Division ("PSD") of the BPD undertook an investigation of the events of May 31, 2009 and the conduct of the defendants herein in arresting J.C., D.S., D.D. and J.W. Part of this investigation included an interview of each of the defendants herein after each defendant was placed under oath on January 26, 2010. The government

concedes that "each of the defendants made a statement to the PSD, apparently under compulsion, *i.e.*, under threat of disciplinary action by the BPD if they refused." Dkt. #34, p. 3.

On February 11, 2010, J.C. and D.S. were examined under oath pursuant to Section 50-h of the New York General Municipal Law with respect to their Notices of Claim against the City of Buffalo. On March 10, 2010, D.S. and J.C. filed a civil action against the City of Buffalo and the defendants herein in Supreme Court, County of Erie, State of New York wherein they sought recovery of damages against the City and the defendants as a result of the alleged unlawful conduct of the defendants herein when arresting J.C. and D.S. on May 31, 2009. This civil action was properly removed to the United States District Court, Western District of New York on April 1, 2010. (10-CV-274, Dkt. #1).

On September 23, 2010, the F.B.I. notified the BPD that it had initiated a "Full Civil Rights Color of Law Investigation into allegations of excessive force utilized by" the defendants herein. Dkt. #23, Document 23-7 attached thereto. Thereafter, on April 18, 2011, a federal grand jury subpoena was issued to the BPD for the production of documents, including the files of the investigation conducted by the PSD of the BPD. Dkt. #23, Document 23-8 attached thereto. In response to this subpoena, production of the requested materials was made by the BPD, but it is unclear from the record in this case to date when those materials were received in the Unites States Attorney's Office; who from that office received them and took them under control and what was done with

those materials during the time they were received in the United States Attorney's Office and finally forwarded to the Department of Justice ("DOJ") on July 29, 2011 for purposes of having a "*Garrity* Screening" of the materials made by representatives of the DOJ. Dkt. #35, ¶ 7. These materials were received by the DOJ on August 1, 2011 and thereafter a "*Garrity* Screening" was conducted and the transcripts of the sworn statements of the defendants given to the PSD investigators were removed from the subpoenaed documents and classified as "*Garrity* statements." Dkt. #35, ¶ 8. The "cleansed" files were then returned to the United States Attorney's Office. Dkt. 5, ¶ 9.

In June and July of 2011 and April 2012, the pretrial depositions of the defendants herein were taken as part of the pretrial discovery process in the aforesaid civil litigation and transcripts of those depositions were prepared. Dkt. #24, Document 24-1 attached thereto, ¶ 11. The pretrial depositions of J.C. and D.S. were taken in March 2012. Dkt. #24, Document 24-1 attached thereto, ¶ 10.

In March of 2014, AUSA Campana was assigned to prosecute this case, and before undertaking his prosecutorial tasks, he requested that "a team from the Civil Division of the United States Attorney's Office screen the PSD documents prior to [his] reviewing them and before having the documents paginated and organized by a paralegal for discovery purposes." He "took this precautionary step because [he] had not been involved in the case previously and had not participated in any steps taken to screen the material initially." Dkt. #35, ¶ 10. Thereafter, the case was presented to the federal grand jury and the indictment herein was returned on May 27, 2014. Dkt. #1.

4

## **DISCUSSION AND ANALYSIS**

The defendants have made a motion wherein they seek "suppression of the statements" which "were made under the threat of losing employment . . . in the presence of internal affairs personnel . . . thus requiring that defendant[s] be granted immunity for any statements made." Dkt. #21, p. 6, ¶ 11; Dkt. #22, p. 11, ¶ 34; Dkt. #23, p. 25, ¶ 47. The government concedes that the statements given by the defendants to the investigating officers of the PSD of the BPD constitute what are legally referenced to as "*Garrity* statements." Dkt. #34, p. 3; Dkt. #35, p. 4, ¶ 8. However, the government asserts that the "*Garrity* statements" made by the defendants herein were not used in any way in obtaining the indictment herein or in pursuing the prosecution of this case. Dkt. #34, pp. 5-7.

The Fifth Amendment to the United States Constitution expressly states that "no person shall be compelled in any criminal case to be a witness against himself." In *United States v. Kastigar*, 406 U.S. 441, 444-445 (1972), the United States Supreme Court held that the privilege against self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."

In *Garrity v. New Jersey*, 385 U.S. 493, 499 (1967), the United States Supreme Court held that the constitutional protection prohibiting the use of coerced

statements against an individual in a criminal proceeding applies where those statements were "obtained under threat of removal from office and that it extends to all, whether they are policemen or other members of our body politic."

> Since the privilege [against self incrimination] is now fully applicable to the State and to the Federal Government, the basic issue is the same whether the testimony is compelled by the Federal Government and used by a State, or compelled by a State and used by the Federal Government.

*Murphy v. Waterfront Com'n of New York*, 378 U.S. 52, 53, FN1 (1964).

In *Kastigar*, which reaffirmed *Murphy*, the Supreme Court emphasized the "heavy burden" of proof that the government must meet, where, as in the case at bar, the defendants' immunized testimony concerns matters related to the federal prosecution as follows:

> Once a defendant demonstrates that he has testified, under a state grant of immunity, to *matters related to the federal prosecution*, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence. This burden of proof, which we reaffirm as appropriate, is not limited to the negation of taint; rather it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.

*Supra* at 460.

The Second Circuit Court of Appeals has likewise made it clear that a mere denial of use or receipt of such testimony is not sufficient in meeting its *Kastigar* burden.

> The inference that the prosecutor's lack of access to compelled testimony assures the existence of independent sources cannot be relied upon to afford the witness the full protection the Constitution guarantees. The prosecutor may have never seen the witness's testimony and may believe in good faith that no one associated with the federal prosecution has seen it, but such a disclaimer does not preclude the possibility that someone who has seen the compelled testimony was thereby led to evidence that was furnished to federal investigators.

*United States v. Nemes*, 555 F.2d 51, 55 (2d Cir. 1977).

In refusing to rely on the prosecutors assertions that neither he nor the F.B.I. agents working this case had ever seen the "*Garrity* statements" of the defendants, this Court directed the prosecutor assigned to the case to submit an affidavit describing, in detail, what steps were taken by the government in the handling and use of the materials that were turned over to the government by the BPD in response to the grand jury subpoena served on it. *See* Dkt. #35, Document 35-1 attached thereto. The government was also directed to provide the Court with the following under seal so as to allow for an *in camera* review of the materials provided: (1) the alleged "*Garrity* statements of the defendants; (2) the transcripts of grand jury testimony given by any law enforcement agent in obtaining the indictment herein; (3) a listing of the witnesses who testified in the grand jury along with a descriptive listing of any exhibits presented to the grand jury in obtaining the indictment herein. *See* Dkt. #39. The government has represented that no exhibits were presented to the grand jury.

7

After having carefully reviewed *in camera* the aforesaid materials as well as the affidavits with attached exhibits of AUSA Campana and S.A.s Taylor and Amo, Dkt. #35, I find that there was no use, either directly or derivatively, of the "*Garrity* statements" of the defendants by the government in obtaining the indictment herein. Without disclosing in any way the evidence that was presented to the grand jury, it is pointed out that the government had at its legitimate disposal for use in the grand jury, the sworn testimony of D.S. and J.C. given by them in the civil proceedings conducted pursuant to Section 50-h of the New York General Municipal Law as well as their sworn testimony given in pretrial depositions in their civil lawsuits against the defendants and the City of Buffalo (Dkt. #24, Document 24-1 attached thereto, ¶ 11). The four individuals identified in the indictment herein as "D.S.," "J.C.," "D.D.," and "J.W." also testified in the grand jury as indicated on the listing of grand jury witnesses provided to the Court *in camera*.

In conclusion, I find that the government has met its burden in establishing that the evidence used in presenting this case to the grand jury was derived from legitimate sources wholly independent of the compelled statements given by the defendants in connection with the BPD/PSD investigation. Therefore it is recommended that the defendants' motion to dismiss the indictment based on their claim of improper use of compelled statements of the defendants be denied. It is also recommended that the defendants' motion "to suppress" their statements which "were made under threat of losing employment" be denied as being moot since the government is legally prohibited from using such statements in its case in chief.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the

portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:    Buffalo, New York
               August 31, 2015

                                      *S/ H. Kenneth Schroeder, Jr.*
                                      **H. KENNETH SCHROEDER, JR.**
                                      **United States Magistrate Judge**